INHABITANTS OF NORRIDGEWOCK *vs.* INHABITANTS OF MADISON.

Somerset.    Opinion July 21, 1879.

Payments made, after notice and without denial of liability, by one town to another, do not estop the town paying to deny the settlement of the pauper therein.

Such payments are evidentiary of the town's liability, the effect of which is for the jury.

The decision of commissioners appointed under R. S., c. 3, § 43, to ascertain and determine the dividing line between towns, is conclusive upon them.

ON EXCEPTIONS AND MOTION to set aside the verdict as being against the law and evidence.

ASSUMPSIT for supplies furnished to John G. Young and family, and Marshall F. Young and family, claimed to be paupers of defendant town. The only question presented to be determined by the jury was a question of the paupers' settlement. There was no pretense that the paupers' settlement was in Norridgewock. The verdict was for the defendants.

The plaintiffs introduced evidence that the paupers had been furnished at previous times and occasions by the overseers of Norridgewock, who had furnished these paupers with necessary supplies, and had given to the overseers of Madison the notice required by statute, and that no denial was ever made by the overseers of

Madison until the accruing of the bill on which this suit was brought, but the overseers of Madison had always paid such bills. The plaintiffs' counsel claimed that such payment in such cases was equivalent to a judgment, and conclusive upon the defendants upon the question of settlement in this case, and asked the judge so to rule, but he refused so to rule, and did rule that it was only evidence to be considered by the jury.

The plaintiffs claimed that the town of Madison having exercised jurisdiction of that territory set to Cornville by line run by commissioners, under R. S., c. 3, § 43, from its incorporation in 1804 to the running of that line in 1876, a residence on that tract on March 21, 1821, was a residence in Madison, and that the running of said line was no evidence that such line was the true line. The court ruled as hereinafter recited.

The only evidence relative to the residence of the father of the paupers on that territory was from Enoch Hayden, who testified that he was born February 24, 1807, and that when he was fourteen, sure, in December, 1821, or January, 1822, he helped remove paupers' mother and two or three children from Corinna to witness' father's house in Cornville, and the father did not accompany them, but had left Corinna before, and he thought was then building the house on the tract above named.

It is admitted that there was, upon the east end of the square lot, a log house in which Samuel S. Young, or Samuel Young, 2nd, once lived, which by this line now comes within the line of Cornville, and which by the line as once occupied was in Madison.

The judge charged the jury as follows : " Something was said in regard to a town line ; that at one time it was considered that a certain house, where it was alleged this man Young resided, was within the town of Madison, and that afterwards the citizens of the town took the legitimate course for establishing a line, and brought that house in the town of Cornville instead of Madison. I instruct you that the record evidence, which has been put in here, of the ascertainment of that line, is binding upon all parties and is the legitimate town line in this case ; so if you find that material, you may consider that line as established at the place where the record says it is."

There was no evidence that the paupers ever acquired a residence in their own right, and the only evidence of any residence, in any way acquired, was evidence tending to show a residence of the paupers' father in Madison, on March 21, 1821, put in by the plaintiffs. There was such evidence introduced. To the rulings applicable to the above no exceptions are taken. The plaintiffs introduced evidence that, in July and August, 1840, the father of the paupers and family, including the paupers, fell into distress, and were relieved by the town of Madison as paupers and from time to time, up to the date of the accruing of the amount in suit, the town of Madison assisted the various members of the father's family, including these paupers, as paupers, supporting them sometimes in Madison, sometimes paying for supplies furnished by one other town to a very large amount. There was no evidence whatever as to residence introduced by defendants. There was no evidence whatever to show that the paupers' father was not born in Madison, and had lived in Madison up to the time that Enoch Hayden testified to moving the family from Corinna to Cornville, in December, 1821, or January, 1822.

The court instructed the jury, as to the payment for medical services in 1840 by the selectmen of Madison, as follows:

"They say probably those medical services were paid for by the overseers of Madison under a misapprehension of the real facts; that they did not go down to the bottom of the investigation at the time and ascertain really where the settlement of Young was; but that they made such an investigation as they did, and they were paying away somebody else's money than their own, to wit: the town's, and they made a mistake. There is the explanation.

"Then the town of Norridgewock go further and put in the deposition of Mr. Lindsey, which you will have with you, and which you have heard read, that Madison has paid sundry bills for the support of these Youngs from 1872 to 1877, some of them pretty large. And they have put in other evidence to the same purport, that Madison has, during a series of years, different years since 1840, paid bills of that character and to quite a large amount; and they urge upon you the argument that they would not have done it unless they had sufficiently investigated to

become convinced that it was their duty, under the law, to do it.

"Individuals, you probably would not expect to be paying money voluntarily, without suit, to a party to whom they owed nothing. If you should have a case come before you and it should be proved that Mr. A. had, for a long series of years, been paying money upon a claim which somebody else had made against him, and he had kept paying, paying year after year, voluntarily, perhaps you would expect that there would be pretty strong ground for believing that he owed or else he would not have done so. We are selfish, we do not pay away our money in that way against our own interests, as a rule, unless we find there is some well founded claim in law or equity; and when we find something of that kind, it is pretty strong evidence that, whatever the party defendant may say now, having had time to look the ground over, there was a pretty well grounded claim, or else he would not have spent so much money in trying to pay it. You have heard the argument on the other side; that there was a certain supposition in relation to the settlement of Mr. Young, and that the successive boards of overseers, one after the other, when a bill came up from some other town for the support or relief of the Youngs, they looked back on the books and found that one set of overseers, away back in 1840, had paid bills of that character, and there had been sundry bills paid since, in different years, and that would rather dull their endeavor to investigate, and they would pay without investigating any further, pinning all their faith upon what they found among the records of the town.

"I instruct you, as matter of law, that this testimony that Madison has paid, so frequently, bills for the relief of these Youngs when they have been presented by other towns, is not conclusive; that it does not bind the town necessarily, so that I can rule as matter of law that they would be estopped to deny it, as I could rule they would be estopped to deny the settlement if they had not returned the answer; but that this is evidence submitted to you as tending to prove that the settlement was really in Madison during all those years, and that it is for you to weigh that testimony, together with all the rest of the testimony in the case bearing upon the question of settlement, and then say, have the

plaintiffs by a preponderance of the testimony in the case satisfied you that the settlement of those Youngs was really in Madison. That is just the legitimate scope and bearing of that testimony. They are facts put in for you to weigh and give them such weight as you, in your wisdom, shall consider they are entitled to, after having heard the arguments on both sides."

The verdict was for the defendants ; and the plaintiffs alleged exceptions.

*J. H. Webster*, for the plaintiffs, cited *Jay* v. *Carthage*, 53 Maine, 128. Mass. Stat. 1793, c. 59. Stat. 1821, c. 122. R. S. c. 24, §§ 27, 28. *Leicester* v. *Rehoboth*, 4 Mass. 180. *Harpswell* v. *Phipsburg*, 29 Maine, 313. *Weld* v. *Farmington*, 68 Maine, 301–306. *Marshpee* v. *Edgartown*, 23 Pick. 156. *Ellsworth* v. *Houlton*, 48 Maine, 416, 423. *Dewey* v. *Field*, 4 Met. 381. *Hearne* v. *Rogers*, 9 B. & C. 577. *Cummings v. Webster*, 43 Maine, 192–194. *Lisbon* v. *Bowdoin*, 53 Maine, 324. *Haines* v. *Ham*, 39 Maine, 268. *State* v. *Jackson*, *Id.* 291. *Propr's Ken. Purch* v. *Laboree*, 2 Maine, 275. *Coffin* v. *Rich*, 45 Maine, 507. *Hughes* v. *Farrar*, 45 Maine, 72.

*Walton & Walton*, for the defendants.

APPLETON, C. J. This is an action to recover for supplies to certain paupers alleged to have their settlement in the defendant town.

The repeated payments by the defendants to the plaintiffs for supplies furnished the paupers, after notice to them and 'without denial of their liability, are claimed to be an estoppel upon them in this action. The more numerous the payments, the greater the probability that the pauper has his settlement in the town so paying. But such payments do not constitute an estoppel. They are important evidence, the force of which, with the other circumstances of the case, is to be determined by the jury. *Ellsworth* v. *Houlton*, 48 Maine, 417. *Weld* v. *Farmington*, 68 Maine, 301. The instructions on this branch of the case are in accordance with the previous decisions.

The settlement of the paupers, as claimed by the plaintiffs, was

derived from the father by virtue of his residence in the defendant town.

The decision of commissioners appointed under R. S., c. 3, § 43, in ascertaining and determining the line between Madison and Cornville, was received in evidence to show that the place where the pauper was said to have his residence was not within the limits of the defendant town. In their report they "ascertain and determine" the line between those towns in part only, there being no dispute between the towns as to the rest of the line. There was, therefore, obviously, no occasion for running an undisputed line. The statute makes the line so ascertained and determined "the true dividing line between such towns," and the presiding justice so declared the law.

The defendants, having repeatedly paid the plaintiffs bills incurred by them for the support of the paupers whose settlement is in controversy, were oppressed with the heavy burden of explaining why such payments were made. There was contradictory evidence upon the controverted questions of fact. The plaintiffs had the advantage of the closing argument, and their learned counsel would not fail to avail himself of all the benefits to be derived therefrom. We do not think there is such a preponderance of evidence in favor of the plaintiffs as requires our interference.

*Motion and exceptions overruled.*

WALTON, BARROWS, DANFORTH and LIBBEY, JJ., concurred.